UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
ANTHONY R. WILSON and
MYRA K. WILSON,
    Debtors.                                No. 7-06-11807 SL

In re:
DIANA L. OBERLANDER and
NICHOLAS A. OBERLANDER,
    Debtors.                                No. 7-06-11824 SL

In re:
MATTHEW J. RIZZUTO,

    Debtor.                                 No. 7-06-11892-SA

**MEMORANDUM OPINION AND ORDER
ON REHEARING
CONCERNING PROPOSED REAFFIRMATION
<u>AGREEMENTS WITH FORD MOTOR CREDIT COMPANY</u>**

These matters came before the Court upon the submission by the parties ("Debtors" and "FMCC" [Ford Motor Credit Company] respectively) of proposed reaffirmation agreements or, in the Rizzuto case, of a proposed consent order approving a reaffirmation agreement. For the reasons cited, the Court declines to "review" the reaffirmation agreements, as that term is used in §524(m), enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")[1], and also declines to enter an order approving or disapproving the reaffirmation agreements.[2]

---

[1] Pub. L. No. 109-08, 119 Stat. 23.

[2] The Court has subject matter and personal jurisdiction
                                            (continued...)

**Background**

In each of these cases, the respective Debtors were represented by counsel. In each case the Debtors filed statements of intention which recited that "Debtor will retain collateral and continue to make regular payments."[3]

The Wilson agreement[4] (doc 13) is for a 2005 Ford Escape, NADA retail value of $18,000, for $10,657 at 4.9%, resulting in 49 monthly payments of $239. Part D recites that the Debtor's[5]

---

[2](...continued)
pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) and (J); and these are findings of fact and conclusions of law as may be required by Rule 7052 F.R.B.P.

[3] These statements appear not to comply with what Congress seems to have intended when it enacted §§521(a)(trailing paragraph) and 362(h). See In re Rowe, 342 B.R. 341, 351 (Bankr. D. Ks. 2006) ("Congress by amending §§ 521 and 362 intended to and was successful in eliminating the 'fourth option'...."). However, that is not an issue in these cases.

[4] The reaffirmation agreement form used in all three cases is the current B240 suggested by the Administrative Office of the United States Courts, with Part D being supplemented by the disclosure required by District of New Mexico Interim Bankruptcy Rule 4008. (NM IBR 4008 is the same rule that has been adopted nationwide to implement part of BAPCPA.) A portion of that rule requires as follows: "The debtor's statement required under §524(k) shall be accompanied by a statement of the total income and total expense amounts stated on schedules I and J. If there is a difference between the income and expense amounts stated on schedules I and J and the statement required under §524(k), the accompanying statement shall include an explanation of any difference."

[5] The Wilsons are now divorced and only Ms. Wilson seeks to reaffirm the debt. In consequence the budget numbers in Part D differ considerably from those in the jointly filed Schedules I
(continued...)

Case 06-11824-s7    Doc 25    Filed 03/12/07    Entered 03/12/07 14:57:37 Page 2 of 12

income is $4,234 and expenses are $3,985, for a surplus of $249, which exceeds the proposed monthly payment by $10. However, Schedules I and J show income of $7,267 and expenses of $8,452 for a monthly deficit of $1,184.

The Oberlander agreement (doc 9) is for a 2004 Ford Mustang, NADA retail value $12,000, for $12,600 at 4.5%, resulting in 42 monthly payments of $316. Part D recites that the Debtors' income is $2,698 and expenses are $2,382, resulting in a surplus of exactly $316. Schedules I and J show income of $2,698 and expenses of $3,459 for a monthly deficit of $761.

The Rizzuto agreement (doc 13) is for a 2005 Ford F-150 truck, NADA retail value of $25,450, for $33,681 at 8.9%, resulting in 59 payments of $693. Part D recites that the Debtor's income is $4,107 and expenses are $3,200, resulting in a surplus of $907. Schedules I and J show income of $4,107 and expenses of $4,481 for a monthly deficit of $374.

Counsel for each of the Debtors explained that after the receipt of the reaffirmation agreement forms from FMCC's counsel, they each met with their respective clients, determined with the clients that retaining these vehicles on these terms were the best the clients could do to ensure they had reliable

---

[5](...continued)
and J.

transportation, and worked with the clients to revise their budgets to be able to afford the payments.[6]

In each case, Debtors' counsel have executed Part C of the respective agreements. In the Wilson and Oberlander cases, Debtors' counsel has hand-checked the box which recites:

> A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payments under the Reaffirmation Agreement.

In the Rizzuto case, a "typewritten" (to use a quaint but descriptive adjective) "X" has been inserted in the same box. Mr. Rizzuto's counsel did not recall one way or the other whether he had checked that box before sending it back to FMCC's counsel.[7]

As a result of an earlier preliminary hearing on the Wilson and Oberlander agreements, the Court had learned that FMCC's counsel had required that the undue hardship box be checked as a condition for FMCC to agree to the reaffirmation agreement. The demand was contained in a fax sent by FMCC's counsel's legal assistant to Wilson's and the Oberlanders' counsel which stated in relevant part exactly as follows:

---

[6] Nothing in this opinion is intended to second-guess counsels' advice to their clients or the judgments made by counsel and clients in seeking to reaffirm.

[7] Not that it makes a difference; clearly both counsel had agreed to have the Court approve or at least review the agreement.

Page 4 of 12

Case 06-11824-s7    Doc 25    Filed 03/12/07    Entered 03/12/07 14:57:37 Page 4 of 12

> As my phone message – We cannot file these
> [reaffirmation agreements] unless you check the box
> indicating a presumption of undue hardship --
> Please call to discuss or I have been instructed to
> file Motions for Relief.

At the earlier preliminary hearing the Court had asked counsel for those three debtors for a copy of the fax, and counsel subsequently filed a copy of the fax as an exhibit in each case (docs 20 and 15 respectively).

The proposed stipulated Rizzuto order contained the following finding:

> Based upon the Debtor's pre-petition budget, the
> reaffirmation may have constituted an "undue hardship."
> The Reaffirmation Agreement explained that the Debtor's
> pre-petition budget included substantial payments made
> on his home mortgage and utilities; however, because of
> a divorce, the Debtor has moved from this residence and
> is no longer making mortgage payments or utility
> payments.  Based on the post-petition budget, the
> Debtor can afford the payments provided for in the
> Reaffirmation Agreement....
> IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:
> The Reaffirmation Agreement between the Debtor and Ford
> Motor Credit Company is hereby approved pursuant to
> 11 U.S.C. §§524(c), (k) and (6)(A) (Part D) and (7)....

Having reviewed both the copy of the fax and the language of the stipulated order, the Court set all three of these matters for (continued) preliminary hearings on January 29, 2007.  At the Wilson and Oberlander hearings FMCC's counsel candidly confirmed the Court's surmise, that FMCC sought a §524(m) "review" or finding for each of these three agreements because in each case Schedules I and J showed a deficit even though the numbers required for §524(k)(6)(A) did not.  From the way that the Court

Case 06-11824-s7    Doc 25    Filed 03/12/07    Entered 03/12/07 14:57:37 Page 5 of 12

put the question to FMCC's counsel, the Court construed FMCC's response to be that FMCC believes the Court's imprimatur will make it more difficult for a debtor to dispute or escape from the binding effect of the reaffirmation agreement at some point in the future. 20070129 FTR tr. at 11.15.50 - 11.18.33. FMCC's counsel went on to say during the course of the hearing that he and the client believed that the requirement of a review was triggered by the numbers on Schedules I and J and therefore to get a hearing debtor's counsel would need to check the undue hardship box. Id. at 11.23.45 - 11.24.50. FMCC's counsel also stated that FMCC was getting different results all around the country on this question. Id. at 11.25.32 - 11.28.42.

    The Court then issued its memorandum opinion in these three cases (docs 22, 17 and 24 respectively). FMCC filed its motion for reconsideration (docs 26, 21 and 26 respectively), and the Court conducted a preliminary hearing on the motion (minutes – docs 28, 24 and 31 respectively). At the hearing FMCC's counsel explained that both he and FMCC's other counsel questioned whether there could or should be a court hearing in these circumstances (i.e., debtor represented by counsel and no presumption of undue hardship), what that hearing, if any, would consist of, and how to get such a hearing. And he reiterated that counsel had these questions concerning both this district and nationwide. 20070220 FTR tr. at 11.15.30 - 11.17.20 and

11.20.40 - 11.21.40. He also explained that FMCC and its counsel concluded that having debtor's counsel check the "undue hardship" box would generate a hearing (as indeed it did), and that in retrospect it would have been the better practice to simply have requested a hearing directly from the Court.  Id. at 11.16.50 - 11.17.20.  (The Court agrees on counsel's assessment of the better practice.)

**Analysis**

11 U.S.C. §524(m)(1) provides as follows:

Until 60 days after an agreement of the kind specified in subsection (c) is filed with the court (or such additional period as the court, after notice and a hearing and for cause, orders before the expiration of such period), it shall be presumed that such agreement is an undue hardship on the debtor if the debtor's monthly income less the debtor's monthly expenses as shown on the debtor's completed and signed statement in support of such agreement required under subsection (k)(6)(A) [Part D] is less than the scheduled payments on the reaffirmed debt.  This presumption shall be reviewed by the court.  The presumption may be rebutted in writing by the debtor if the statement includes an explanation that identifies additional sources of funds to make the payments as agreed upon under the terms of such agreement.  If the presumption is not rebutted to the satisfaction of the court, the court may disapprove such agreement. No agreement shall be disapproved without notice and a hearing to the debtor and creditor, and such hearing shall be concluded before the entry of the debtor's discharge.

In at least one respect, this portion of the statute is clear[8]: the presumption of undue hardship which mandates court

---

[8] This part of BAPCPA is oddly worded and difficult, making the form that tracks the statute also hard to work with.  See In
(continued...)

"review" arises only from the numbers in §524(k)(6)(A); that is, only from the numbers in the statutorily mandated portion of Part D as distinguished from the following portion of Part D that arises from the interim rule.  That the analogous numbers from Schedules I and J differ from those in "statutory Part D" is irrelevant for purposes of the review.  Thus it is simply not accurate to check the "undue hardship" box if the statutory Part D numbers do not show a deficit when the reaffirmed monthly payment is taken into account.  It appeared to the Court that what FMCC was doing, therefore, was in effect procuring a false statement in order to obtain a ruling to which the statute did not entitle it.  It also appeared to the Court that FMCC was pressuring Debtors' counsel to inaccurately or even falsely certify by their signatures something that simply is not true.  See Rule 9011(b) F.R.B.P.[9]; see also §526(a)(2) ("A debt relief agency shall not...make any statement...that is untrue or misleading....").  Based on FMCC's explanation contained in its

---

[8](...continued)
re Mendoza, 347 B.R. 34, 40 and n.11 (Bankr. W.D. Tex. 2006) (illustrating the administrative difficulties with the statute and the form and suggesting procedures to effectuate the statute).  See generally David B. Wheeler and Douglas E. Wedge, A Fully Informed Decision: Reaffirmation, Disclosure and the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 79 Am. Bankr. L.J. 789 (2005).

[9] The Court is familiar with all three counsel as competent and ethical lawyers.  Nothing in this opinion is intended to suggest otherwise.

local counsel's written and oral submissions, the Court concludes that counsel and FMCC were confused about the statute's effect and what to do about it.

The fact that NM IBR 4008 requires the additional disclosure of the schedule I and J figures does not change the statute's clear instruction to look only at the specified Part D numbers in determining whether there is a presumption of undue hardship. It is true that NM IBR 4008 in effect adds the schedule I and J numbers to Part D of the B240 form, but §524(m) refers only to the specified language of §524(k)(6)(A) and not to any additions required by a local rule. It is also true that, when a debtor is not represented by counsel and the Court is reviewing the file in order to make the reaffirmation decision on behalf of the debtor as required by §524(c)(6)(A), the Court will look at virtually the entire file, including most obviously schedules I and J. See, for example, In re Payton, 338 B.R. 899 (Bankr. D. N.M. 2006) (full review of debtors' circumstances in determining whether to approve reaffirmation agreement). But these debtors had counsel, a consequence of which is that the Court's review is limited to any review both required and limited by §524(m). See In re Laynas, 345 B.R. 505, 512 (Bankr. E.D. Pa. 2006)(§524(m) review required regardless of counsel if presumption arises.)

FMCC is of course entitled to not enter into a reaffirmation agreement with a debtor, even if the debtor proposes to reaffirm

on the original contract terms. §524(c) ("An <u>agreement</u> between a holder of a claim and the debtor....") (Emphasis added.); see §362(h)(1)(B) (providing that if the debtor has timely and correctly filed a statement of intention to reaffirm the debt on the original contract terms and the creditor refuses to reaffirm, the automatic stay is not terminated). The Code also allows FMCC to seek stay relief before the discharge is entered and the case is closed, or to wait until those events have taken place and the stay expires on its own.[10] And, candidly, probably nothing in the Bankruptcy Code prevents FMCC from attempting to regain possession of the vehicle from a represented debtor in response the Court's not reviewing a reaffirmation agreement when Part D does not raise a presumption of undue hardship. The existence of all of these remedies merely underscores that a creditor in the position of FMCC in these cases has no basis for requesting a hearing, much less demanding that debtor's counsel certify that a presumption of undue hardship has arisen.

**Conclusion and Order**

---

[10] Nothing in this decision is intended to rule on whether a debtor who has stayed current on her payments and has maintained insurance on the vehicle has a cause of action under nonbankruptcy law if the creditor repossesses the vehicle before or after the case closes. See <u>In re Laynas</u>, 345 B.R. at 517 and n.11; <u>In re Rowe</u>, 342 B.R. at 350 ("The creditor's right to foreclose on the collateral is controlled by the security agreement and state law.").

Following the dictate of §524(m), the Court is not required (or even permitted) to "review" the presumption of undue hardship in these cases since it is not raised. And since each Debtor was represented by counsel in making the reaffirmation agreement, the Court will also not approve or disapprove any of the agreements, as would otherwise be required by §524(c)(6)(A).[11]

IT IS THEREFORE ORDERED that the Court will not review any of these reaffirmation agreements with FMCC (Wilson – doc 13; Oberlander – doc 9; Rizzuto – doc 13), nor will it approve or disapprove any of these agreements, whether by stipulated order or otherwise.

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

---

[11] This ruling is not intended to suggest that, had Debtors not been represented by counsel in make these agreements, the Court would not have approved them. Were the various Debtors to have purchased vehicles postpetition to replace these vehicles, the Debtors would have incurred debts that of course would not be discharged in their pending chapter 7 cases. And it is unlikely that Wilson or the Oberlanders could obtain better interest rates and prices than contained in the reaffirmation agreements. On the other hand, there may be other factors that would militate against approving these agreements. Whether such factors exist is not known, since the Court has not conducted the sort of examination that might uncover such factors or disclose that there are none.

copies to:

Ford Motor Credit Company
c/o Atty Allan L. Wainwright
920 Lomas NW
Albuquerque, NM 87102

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

Louis Puccini, Jr
PO Box 30707
Albuquerque, NM 87190-0707

Matthew J Rizzuto, Debtor
3313 Red Rock Court
Rio Rancho, NM 87144-6598

Linda S. Bloom
Trustee
PO Box 218
Albuquerque, NM 87103-0218

Anthony R. Wilson
P.O. Box 152
High Rolls Mountain, NM 88325

Myra K. Wilson
P.O. Box 152
High Rolls Mountain, NM 88325

Oralia B Franco
650 East Montana Suite E
Las Cruces, NM 88001-3100

Kieran F. Ryan
Trustee
PO Box 26
Las Cruces, NM 88004-0026

Diana L. Oberlander
505 5th Street
Tularosa, NM 88352

Nicholas A. Oberlander
505 5th Street
Tularosa, NM 88352

Philip J. Montoya
Trustee
PO Box 159
Albuquerque, NM 87103